# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KRISTINA DORSEY,**<br>Plaintiff,<br><br>v.<br><br>**MERAKEY USA,**<br>**MERAKEY PENNSYLVANIA, and**<br>**MERAKEY PARKSIDE RECOVERY,**<br>Defendants. | CIVIL ACTION<br><br><br><br>NO. 18-4837 |

**DuBois, J.**                                                                                                            **May 6, 2019**

## M E M O R A N D U M

## I.    INTRODUCTION

This wrongful termination case arises out of plaintiff Kristina Dorsey's alleged employment with defendants Merakey USA, Merakey Pennsylvania, and Merakey Parkside Recovery. Presently before the Court is defendants' motion to dismiss plaintiff's Pennsylvania Whistleblower Law (Count IV) and common law wrongful termination (Count V) claims. For the reasons that follow, the motion is granted in part and denied in part.

## II.    BACKGROUND[1]

Plaintiff, a white female, was hired by defendants—Merakey USA, Merakey Pennsylvania, and Merakey Parkside Recovery—in or about October 2017. Am. Compl. ¶¶ 14–15. Plaintiff was "later promoted" and "transferred" to defendant Merakey Parkside Recovery, a drug and alcohol treatment center. *Id.* ¶¶ 16–18. Plaintiff's supervisor was Joshua Vigderman, a white male. *Id.* ¶ 19. Plaintiff asserts that during her employment, she observed unlawful activities by defendants, including the following: (1) Vigderman told plaintiff one of his "biggest problems" was a "black Muslim" employee and asked plaintiff to "find any reason to get rid of her"; (2) Vigderman "made sexist comments and treated plaintiff and other females disparately";

---
[1] In this Memorandum, the Court includes only those facts necessary to explain its decision.

and (3) defendants engaged in "medical illegalities," including withholding medications from patients until they attended therapy, releasing patients without medical consultation, "downplay[ing] HIPAA[2] violations to falsely lessen the number of patients whose access was improperly disclosed and to make false or misleading statements concerning medical compliance internally and externally," and, newly alleged in the Amended Complaint, "over-billing the federal and state government for supposed patient treatment that in fact never occurred." *See id.* ¶ 20. Plaintiff avers that she objected to, and refused to engage in, this behavior and, as a result, was terminated on or about June 13, 2018. *See id.* ¶¶ 20–21, 40.

Plaintiff filed the Complaint on November 8, 2018, asserting that she was wrongfully terminated in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e) *et seq.* (Counts I & III); 42 U.S.C. § 1981 (Count II); the Pennsylvania Whistleblower Law, 43 Pa. Stat. Ann. §§ 1421 *et seq.* (Count IV); and common law Pennsylvania public policy (Count V). Defendants filed a partial motion to dismiss on January 4, 2019, seeking dismissal of plaintiff's Pennsylvania Whistleblower Law (Count IV) and public policy (Count V) claims. By Order dated February 25, 2019, the Court granted that motion, dismissing those claims without prejudice. On March 14, 2019, plaintiff filed an Amended Complaint, asserting the same claims. Defendants filed a second partial motion to dismiss on April 4, 2019 (Document No. 22). Plaintiff responded on April 17, 2019 (Document No. 23). The Motion is thus ripe for decision.

**III.    LEGAL STANDARD**

"The purpose of a 12(b)(6) motion to dismiss is to test the legal sufficiency of the complaint." *Nelson v. Temple Univ.*, 920 F. Supp. 633, 634 n.2 (E.D. Pa. 1996). To survive a motion to dismiss, plaintiff must allege "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

---

[2] Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104–191, 110 Stat. 1936 (1996).

(internal citations omitted). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. In assessing the plausibility of the plaintiff's claims, a district court first identifies those allegations that constitute nothing more than mere "legal conclusions" or "naked assertion[s]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 564 (2007). Such allegations are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The court then assesses "the 'nub' of the plaintiff['s] complaint—the well-pleaded, nonconclusory factual allegation[s]"—to determine whether it states a plausible claim for relief. *Id.* at 680. "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

## IV. DISCUSSION

### A. Pennsylvania Whistleblower Law (Count IV)

The Pennsylvania Whistleblower Law provides:

> No employer may discharge, threaten or otherwise discriminate or retaliate against an employee . . . because the employee or a person acting on behalf of the employee makes a good faith report or is about to report . . . an instance of *wrongdoing or waste by a public body* or an instance of waste by any other employer as defined in this act.

43 Pa. Stat. Ann. § 1423 (emphasis added). Plaintiff asserts that she was terminated for objecting to "wrongdoing," not "waste." *See* Am. Compl. ¶ 37 (claiming plaintiff was terminated "for objecting to and reporting illegalities"); Pl. Resp. Opp. Defs. Part. Mot. Dismiss 9 ("Defendants' illegal conduct represents instances of 'wrongdoing' . . . ."). Thus, under the plain language of the statute, she must plead facts sufficient to show that defendants are "a public body." *See* 43 Pa. Stat. Ann. § 1423.

3

Defendants argue that they are private non-profit corporations, not public bodies. Defs. Part. Mot. Dismiss 6–7. Under the statute, a "public body" includes, *inter alia*, a "body which is created by Commonwealth or political subdivision authority or which is funded in any amount by or through Commonwealth or political subdivision authority." *Id.* § 1422. In the Amended Complaint, plaintiff alleges three different sources of "public monies" that defendants receive, which plaintiff argues make defendants a "public body": Medicaid reimbursement, a state block grant, and federal block grants. *See* Am. Compl. ¶¶ 33–35. The Court will address each of these averments in turn.

First, plaintiff asserts that defendants receive "Medicaid reimbursement." *See* Am. Compl. ¶ 33. Neither the Pennsylvania Supreme Court nor the Third Circuit has determined whether the receipt of Medicaid reimbursements is sufficient to render an entity a "public body." *See Grim v. May Grant Assocs.*, No. 18-2231, 2019 WL 358520, at *4 (E.D. Pa. Jan. 29, 2019). The majority of courts in the Third Circuit to address this question have concluded that the Pennsylvania Supreme Court would hold Medicaid reimbursements are insufficient to render an otherwise private entity as a "public body." *See, e.g.*, *Cohen v. Salick Health Care, Inc.*, 772 F. Supp. 1521, 1526 (E.D. Pa. 1991); *Eaves-Voyles v. Almost Family, Inc.*, 198 F. Supp. 3d 403, 409 (M.D. Pa. 2016). The Court agrees with those cases.

"The words 'funded in any amount by or through' are naturally read to denote money that is specifically appropriated by a governmental unit. Such appropriations may come in the form of periodic or one-time payments, but they are not controlled by the whims of patients eligible for Medicaid." *Tanay v. Encore Healthcare*, 810 F. Supp. 2d 734, 743-44 (E.D. Pa. 2011); *see also Cohen*, 772 F. Supp. at 1527 ("Although there is no question that many doctors and other health care providers receive 'funds' for services rendered to Medicaid eligible patients, . . . the

4

legislature did not intend that the mere receipt of monies from a state source for services rendered should bring the recipient within the Whistleblower Law.").

Plaintiff argues that this conclusion is outdated in light of the 2014 amendments to the Whistleblower Law, which expanded the definition of "employer" to include individuals, partnerships, associations, and corporations both for profit and not for profit that "receive[] money from a public body to perform work or provide services relative to the performance of work for or the provision of services to a public body." *See* Pl. Resp. 9–11; 43 Pa. Stat. Ann. § 1422; *see Gratz v. Ruggiero*, No. 16-3799, 2017 WL 2215267, at *7 (E.D. Pa. May 19, 2017) (explaining the amendment was meant to "expand coverage of the law to include employees of companies that are performing services for public bodies with public monies" (quoting Brian L. Ellis, Pa. H.R. Co-Sponsorship Memoranda, H. Bill 105 (Jan. 11, 2013)). However, the legislature made no changes to the definition of "public body," so the conclusion that Medicaid reimbursements are insufficient to render a private entity a "public body" remains unchanged. Thus, plaintiff's argument that the 2014 amendments impact this conclusion fail.

Second, plaintiff alleges that defendants are a "public body" because they "receive state funds as part of the Pennsylvania Department of Drug and Alcohol Program's Substance Abuse Prevention and Treatment Block Grant . . . when they furnish treatment to patients who are eligible for Medicaid but their application is still pending." *See* Am. Compl. ¶ 35. The Medicaid cases discussed *supra* are again instructive. In *Tanay*, the court reasoned that "a governmental assistance program, which directly benefits eligible participants and indirectly benefits private bodies, does not qualify as funding by the Commonwealth." 810 F. Supp. 2d at 744. Accepting plaintiff's description of this grant as correct, these "state funds" operate in the same fashion as Medicaid: they are not "specifically appropriated by a governmental unit" but rather, only

5

"indirectly benefit[]" the entity and "directly benefit[] eligible participants." *See id.* Thus, this source of funding is also insufficient to qualify defendants as public bodies.

Finally, plaintiff alleges that defendants "receive federal block grants as part of the Substance Abuse and Mental Health Block Grant program as mandated by Congress," which provides defendants grant money when patients are administered "suboxone, a drug utilized in assisting addicts control withdrawal symptoms, and naltrexone, a medication used to inhibit patient abuse and overdose." *See* Am. Compl. ¶ 34. This too is unavailing. Under the plain language of the statute, for an entity to be considered a "public body," the funding must come from "Commonwealth or political subdivision authority"—not a federal source. *See* 43 Pa. Stat. Ann. § 1422; *see also Davis v. Point Park Univ.*, No. 10-1157, 2010 WL 4929104, at *12 (W.D. Pa. Nov. 30, 2010) (granting motion to dismiss where the only source of funds plaintiff explicitly alleged was a federal source).

Accordingly, plaintiff has not pled sufficient facts to show that defendants are public bodies. Defendants' motion to dismiss plaintiff's Pennsylvania Whistleblower Law claim (Count IV) is granted, and the claim is dismissed with prejudice.

### B. Common Law Wrongful Termination (Count V)

Defendant argues that plaintiff's common law wrongful termination claim must be dismissed, because she has failed to allege facts showing that her termination violated any public policy exception to Pennsylvania's at-will employment doctrine. Defs. Part. Mot. Dismiss 13.

"Generally, an employer may terminate an at-will employee for any reason, with or without cause." *Tanay*, 810 F. Supp. 2d at 737. An exception to this rule exists "where the termination implicates a clear mandate of public policy in this Commonwealth." *McLaughlin v. Gastrointestinal Specialists, Inc.*, 750 A.2d 283, 287 (Pa. 2000). This "public policy" exception

is "limited" but has been recognized in three circumstances: (1) where an employer "require[s] an employee to commit a crime," (2) where an employer "prevent[s] an employee from complying with a statutorily imposed duty," or (3) where an employer "discharge[s] an employee when specifically prohibited from doing so by statute." *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 111 (3d Cir. 2003). To state a cause of action under a public policy exception to the at-will employment doctrine, "the employee must point to a clear public policy articulated in the constitution, in legislation, an administrative regulation, or a judicial decision" of Pennsylvania. *See Hunger v. Grand Cent. Sanitation*, 670 A.2d 173, 175 (Pa. Super. Ct. 1996).

Count V of the Amended Complaint first states that plaintiff was wrongfully terminated because she "refused to: (a) make false statements about medical compliance and HIPAA regulations, including those Defendants were under a statutory obligation to report." Am. Compl. ¶ 40. Plaintiff argues that this allegation falls within the second public policy exception—that an employer cannot "prevent an employee from complying with a statutorily imposed duty." *See* Pl. Resp. 14; *Fraser*, 352 F.3d at 111. Plaintiff asserts that the statutory duty at issue is established by the HIPAA Breach Notification Rule, 45 C.F.R. §§ 164.400–414, "which requires covered entities to provide notification following a breach of unsecured protected health information." *See* Am. Compl. ¶ 40 n.4. This argument fails. "[T]he Pennsylvania Supreme Court has made it clear a plaintiff may only bring a claim for wrongful termination if his or her termination violated the public policy of *Pennsylvania*." *Conklin v. Moran Indus., Inc.*, No. 11-411, 2011 WL 2135647, at *5 (E.D. Pa. May 31, 2011) (emphasis in original). Accordingly, "it is a mistake to baldly point to a federal statute or administrative regulation and, without more, proclaim this as the public policy of the Commonwealth."

7

*McLaughlin*, 750 A.2d at 290. Because plaintiff cites only to federal law, without more, this ground for Count V must fail.

Next, Count V states that plaintiff was terminated because she "refused to . . . engage in fraudulent billing and fraudulent agency disclosures that are prohibited by law." Am. Compl. ¶ 40. Plaintiff contends that this falls under the first public policy exception—that an employer cannot "require an employee to commit a crime." *See* Pl. Resp. 16; *Fraser*, 352 F.3d at 111. Plaintiff cites to four criminal statutes in support of this claim. *See* Am. Compl. ¶ 40 n.5. Two of these statutes are federal statutes—specifically, the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, and the False Statements Act, 18 U.S.C. § 1001. For the reasons discussed *supra*, plaintiff's references to federal law are unavailing.

Plaintiff's other two references are to Pennsylvania criminal law. First, plaintiff cites 62 Pa. Stat. Ann. § 1407, which, *inter alia*, criminalizes fraud in connection with medical assistance programs like Medicaid. *See* Am. Compl. ¶ 40 n.5. Plaintiff avers that she refused to join defendants in "knowingly alter[ing] treatment receipts in order to defraud state and federal payers and receive Medicaid reimbursement funds in excess of actual treatment patients received" in violation of this statute. *See id.* Second, the Court interprets the Amended Complaint to cite 18 Pa. Stat. Ann. § 4911,[3] which criminalizes tampering with public records. *See id.* Plaintiff argues that she refused to join defendants in violating this statute by "concealing a breach of over 500 individuals' protected health information in order to avoid disclosing the breach publicly to media outlets." *Id.* Defendants argue that these citations fail, because plaintiff did not allege "how her actions would have subjected her to criminal sanctions" or "how

---

[3] Plaintiff cites "18 Pa.C.S. § 494" in the Amended Complaint and in her response to the motion. *See* Am. Compl. ¶ 40 n.5; Pl. Resp. 16. This statute does not exist. Given the context, the Court follows defendants in interpreting this citation to refer to 18 Pa. Stat. Ann. § 4911.

8

she was required to violate the law." Defs. Part. Mot. Dismiss 22–23. The Court disagrees with defendants on this issue.

The Court concludes that plaintiff has sufficiently alleged that she was terminated for her refusal to commit these crimes. She pleads that her supervisor "direct[ed]" her to "falsely lessen the number of patients whose access was improperly disclosed." Am. Compl. ¶ 20(3). She also alleges that she "refused" to "engage in fraudulent billing." *See id.* ¶ 40. If, after discovery, defendants conclude that these allegations lack evidentiary support, they may move for summary judgment.

Finally, plaintiff broadly asserts that her termination violated the public policy articulated in the Pennsylvania Whistleblower Law, because defendants fired her for reporting wrongdoing. *See* Pl. Resp. 16–17; 43 Pa. Stat. Ann. § 1423. Plaintiff argues that this falls under the third public policy exception—that an employer cannot "discharge an employee when specifically prohibited from doing so by statute." *See* Pl. Resp. 16; *Fraser*, 352 F.3d at 111. For the reasons already articulated, plaintiff has failed to show that defendants were "specifically prohibited" from firing her by the Whistleblower Law. Plaintiff has not shown that her termination for reporting alleged wrongdoing falls under any of the three recognized exceptions to at-will employment doctrine. Outside of these exceptions, the Pennsylvania Supreme Court has stated that exceptions "should be applied in only the narrowest of circumstances" where "the termination implicates a clear mandate of public policy in this Commonwealth." *McLaughlin v. Gastrointestinal Specialists, Inc.*, 750 A.2d 283, 287 (Pa. 2000). Given the Whistleblower Law's focus on public entities—and private entities receiving public monies—the Court cannot conclude that Pennsylvania has a "clear mandate of public policy" of protecting whistleblowers in the private sphere. The Court thus rejects this argument.

In sum, plaintiff adequately alleges a common law wrongful termination claim in Count V on the grounds that plaintiff was terminated because she refused to "engage in fraudulent billing and fraudulent agency disclosures that are prohibited" by Pennsylvania criminal law.

## V. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants' Partial Motion to Dismiss. The Court grants that part of the Motion seeking to dismiss plaintiff's Pennsylvania Whistleblower Law claim (Count IV), and that claim is dismissed with prejudice. The Court denies that part of the Motion seeking to dismiss plaintiff's common law wrongful termination claim (Count V). An appropriate order follows.